Good morning, your honors. May it please the court, my name is Matt Greenwell. I represent Dennis Gehrisch, the appellant in this instant appeal. I'd like to reserve four minutes for an insurance dispute arising out of a collision with an automobile. And the two specific issues in the policy or questions we need to answer is whether or not diminution in value is available under the policy. And number two, whether or not Chubb, the insurer, should have declared the vehicle a total loss. And before I talk about the specifics, I'd like to just briefly touch on a few global concepts which I think are included in the brief but may have been more fodder instead of something that I think is a focus. And the first point is, number one, a car that's been in an accident and has been repaired has less value than one that hasn't been in an accident. Now this value is not going to be significant in the case with a run of the mill, your mass produced cars. But when you get into a case such as this, where you're talking about a sports car or an exotic car that has, you know, if you can afford one of these cars, then you're not looking to buy one that's been in an accident. So the value decreases substantially. The second point is that this policy is an all risks policy, which is, we briefed this and it's in there, it's different than your run of the mill. And this isn't to say that diminution in value is a risk or a peril. It's just to show that the overall policy is broad and the intent of the parties was to be over inclusive instead of specifically listing what the coverages would be. Here in this case, there is no exclusion. The third point is that this policy is marketed towards your high end consumers. The person who has a unique home, who has art collectibles that type of thing, one off products, so their whole marketing is that it's designed for people who expect more. And that's not necessarily in the record, but we haven't gotten that far in the case. And then final point is that Ohio law has not addressed whether or not a third party claim, or sorry, excuse me, a first party diminution in value claim is viable under Ohio law. So to the extent that there's any common law out there, or cases that guide us, I think what we really need to look at is the actual policy language. Now shifting to the policy language, I think in this case when you're talking about the diminution in value claim, the important thing is that there is no limit of liability on the insurer under the partially damaged or partially repaired property in this case. And I think that's significant because the cases that were cited by Apelli throughout, I've provided the actual insurance policy and in each of those policies you will see that not only will they talk about their obligation to repair, there's also a limit on the amount that they will be provided in coverage for a partial loss. And in that case, if you look at... There's a limitation here in that there's $310,000 coverage, is that right? Right. The only limitation would be the agreed value of the vehicle, which is the $301,000. There's no limit in the sense of our obligation is limited for a partially damaged vehicle just to the repair of the vehicle or replacement of the parts. Where in the policy is there language that addresses the diminution in value that says diminution in value is covered? There is no language in the policy that actually speaks of diminution in value, but I would suggest to you that the lack of including that language is not detrimental to the coverage existing. And I think conversely, the opposite is true in the sense that because other insurance policies, your run-of-the-mill insurance policies have an actual limitation in that type of provision. Without including that limitation, the intent is to include that and you couple the diminution or you couple that fact with this is an all-risk policy where it's much broader, I think the intent of the party starts to come through. Let's look at what the policy does say and maybe you can sort of follow up to what Judge Clay has been asking. I believe what the policy covers is the physical loss, which is limited to the cost to repair or replace damaged parts. And there's no mention anywhere that I can see of any coverage for diminution in value. So how do you get from physical loss limitation to repair or replace damaged parts to diminution in value? Am I looking at that right? No, completely. I understand your question. And I think I would put it this way, is that the obligation to repair or replace for a partial loss, I don't think that is the exclusive remedy. I think your coverage, well, first off, the physical loss, we don't, the physical loss in this case, and I think Apelli will agree that there was a physical loss that caused the damage. We triggered coverage. They haven't disputed that there isn't coverage. They found to what damages are available under the policy. And I think if you, I don't know if I'm answering your question, but... Well, I think you are. I guess I go back to Judge Clay's question. You know, where in the, this is a contract between your client and the insurance company, and where in this contract can we find language reasonably interpreted that would cover diminution of value? And just having an all risk policy would seem not to include diminution of value. And there is a distinction, I guess, between risk and damage as well. Correct. A cost of repair is also not a risk, it's a damage. I guess, what would you cite to us as the language that most strongly supports your argument that diminution of value is covered? If I were to cite to you, I would cite, well, I would cite you to the fact that there is no limitation on their coverage or diminution of value is not included. I think if you're looking at a policy, and I've looked at quite a few auto policies, everyone I've seen have had in some sort of limitation. In all the cases they cited, I've pulled and provided you with the limiting language. Once there's coverage, if they seek to exclude, I would suggest that the burden is on them to establish an exclusion or that coverage does not exist under Ohio law. And I think in this case, the fact that there isn't this limiting language where it says our liability is limited to the cost of repair, there's no such language in there. And I think that is significant. Well, at the same time, the insurer did not rely on an exclusion here, correct? Excuse me? The insurer did not rely on an exclusion to the policy here. That is correct. It seems that under Ohio law, then, your client has the burden of establishing coverage. As you tell me, it's otherwise. And I would agree with that. And I think, Your Honor, that the record will show that we have established coverage for diminution in value. And that is one of the elements that would be present. And the reason that, well, I think you have to kind of look at it in a sense of, you know, what is this overall policy? What is the intent of the parties? And I think the intent is to be a broader type of coverage. And without that limiting language, I think you kind of have a burden on them to establish that this isn't covered. Now, shifting back to the policy, and we'll go to the briefly talk about the total loss analysis. The total loss analysis, and I guess the real question is, is what numbers to plug into this formula to determine whether or not there is a total loss? And I guess the question is the market value as the policy requires as one of those figures. And I think where we have an issue is, well, one, the numbers that the insurer actually chose in this case. Well, I'm a little confused as to how you say that the loss can be calculated under the policy that defines total loss or total destruction. You think the salvage value is $40,000, $140,000, right? Well, actually the fair market value or the market value of the vehicle. The salvage value, Your Honor, would be determined by them, which we've learned later was $125,000. Okay. I was thinking it was $136,000, but I might be misremembering that. In any event, that figure, whatever it is, plus the cost of repairs is less than the fair market value. And I think It doesn't matter whether you take your numbers or their numbers. I would disagree with that point only because our number of the fair market value is $140,000 which would be the $120,000. Well, they get to decide what the salvage value is. And where do you leap from salvage value to market value being the same? Well, the actual, what we have here is the salvage value they determined was $125,000 Well, I understand, but market value and salvage value are not necessarily the same. And how do you get to equating the two? Well, the formula is the salvage value versus the cost of repairs versus the total value of the vehicle. So we have the salvage of $125,000. We have $36,000 and some change in repairs on one side of the equation. The next side of the equation is the $140,000 or what is the fair market value. And in our case, our expert where we attached is a letter that said, I'm out of time. Would you like me to continue? You may. Okay. Our expert said it was $140,000 was a fair market value. And I think the reason where there's a huge discourse is whether or not Your expert believes that salvage value and fair market value are the same? No. Well, then how do you get to $140,000 being the market value? This expert determined that if he were to take this repaired vehicle now and put it on his lot, he would put $140,000 retail value on it. And that is found in? That is, it was actually an attachment. There was a letter from a dealer that should be in the record that was attached to the complaint. Okay. I'm sorry. Go ahead. How does this person who sent a letter qualify as some sort of expert? Well What I'm looking at has absolutely nothing about his credentials, nothing about anything. He just says he thinks that the current retail value of the car is $140,000. And we don't know who he is. I think the problem there is the record had not been developed. This was dismissed on a 12B6. So whether or not we could have really submitted affidavits in support of that, I think we would have gone past what we were able to do. Well, you can always qualify an expert in the context. I mean, if you're able to submit any evidence at all, you're able to qualify your expert. But I've concluded my question. And finally, the other points regarding the state law claims, I will defer to the briefing. Whether the bad faith, everything else, I think it turns on the coverage issues. Thank you, Your Honors. Thank you, Counselor. May it please the Court. I am John Travis, privileged to represent Pacific Indemnity Company. Your Honors, this case involves a straightforward coverage question. Whether the Pacific policy provides first party coverage for diminution in value. The plain language of the policy consistent with Ohio case law leads to the inescapable conclusion that there is no coverage for diminution in value. Our analysis, of course, begins with the policy language, which is presumed to reflect the intent of the parties. The policy sets forth the payment basis. Stated otherwise, as Chief Judge Cole has recognized, it's the contract of insurance, not common law tort principles, which prescribe what is to be paid. The policy states, in pertinent part, for a covered loss to a vehicle, we will pay as follows. And under partial loss, if the vehicle is partially damaged, we will pay the amount required to repair or replace, whichever is less, the damaged parts without deduction for depreciation, up to the amount of coverage for each occurrence with labor and parts of like kind and quality. There is no statement here, or anywhere else in the policy, that Pacific will pay for diminution in value. The appellant essentially wants to rewrite the policy to include coverage that's not there. But the parties, of course, are bound by the policy language. The appellant's argument finds no support in the policy language or the case law. In fact, the argument the appellant makes has been specifically rejected in Ohio. Opposing counsel has indicated there is no Ohio law on this point. I respectfully disagree. The Samuels v. Nationwide Mutual Insurance Company case out of the 10th District, Franklin County, is on point. And there, the insured, like Mr. Garrish here, made a claim under his own insurance policy for first-party collision coverage. After the vehicle was repaired, the insured sued his insurer, seeking the difference in value of his vehicle before and after the accident. The court affirmed the decision of the trial court, which had granted the insurer's dispositive motion, finding that the plain language of the policy did not require the insurer to pay a diminution in value claim. Now, the appellant attempts to dismiss the impact of Samuels by noting that the nationwide policy there provided that the obligation to pay was limited to the cash value of the auto or its damaged parts. Appellant emphasizes that the Pacific policy does not use the word limited, but that's a distinction without a difference. The Pacific policy language states that if the vehicle is partially damaged, we will pay the amount required to repair or replace whichever is less, which essentially is a limitation, the damaged parts without deduction for depreciation up to the amount of coverage, which is the coverage limit, as the court has recognized. The language in both the nationwide policy in Samuels and the Pacific policy in this case state what is to be paid. Neither policy states that diminution in value is to be paid. Now, appellant keeps arguing that this is an all-risk policy and that there is no diminution in value exclusion. We're not relying on an exclusion. And an all-risk policy describes the perils covered, not the damages that are recoverable. It's an all-risk, not an all-damage policy. The case law is in accord. State Farm v. Superior Court rejected a similar argument. The policyholder there said that under an all-risk policy, diminution in market value should be covered. The court rejected that, emphasizing and noting that diminution in market value is not a peril at all. It's a method of measuring damages. So there is case law supporting our position. I haven't seen a single Ohio case or well-reasoned case that supports the plaintiff's position. Now, if we were in Georgia, where they have a 75-year history of paying diminution in value claims, that would be one thing. But in Ohio, like most states, you read the policy. Is it covered? Is it not covered? It's just not covered here. Now, again, the appellant argues that because there's no exclusion for diminution in value, it's covered. Well, the policy doesn't contain an exclusion for sentimental value of an automobile. But that doesn't mean that sentimental value is covered. The policy, in clear language, sets forth the payment basis, which does not include diminution in value. Now, the appellant makes an alternate argument, which is confusing, about total loss. He says, well, his car really was a total loss, so he should win on that basis. And, in fact, he's claiming that Pacific acted in bad faith by not declaring this vehicle a total loss. Well, the policy language, again, is the touchstone. It sets forth the payment basis. For a covered loss to a vehicle, we will pay as follows. As Judge Gibbons indicated, the policy states under total loss, if the vehicle is stolen or totally destroyed. This vehicle was not stolen. So what does totally destroyed mean? It goes on to explain, two paragraphs hence. A vehicle is totally destroyed when the salvage value, determined by us, by Pacific, plus the cost, per ann labor and parts of like kind and quality without deduction for depreciation, close per ann, necessary to repair the vehicle is equal to or greater than the market value of the vehicle. Well, the numbers don't work. The salvage value which the policy provides, and opposing counsel has conceded, is determined by Pacific as $125,000. The repair costs were $36,000. That adds up to $161,000. It doesn't sound like a total loss. I gather, I mean stripped to its bare essentials, what the argument made by plaintiffs is or must be is that after the accident, market value of the vehicle becomes essentially the same as the salvage value, whether it's his $140,000 figure or your $125,000 figure. That may be what the appellant is arguing, but it doesn't make any sense. I respectfully submit the... What about does his so-called expert create a genuine issue of fact as to what figure were to use for market value? It does not, Your Honor. It doesn't change the facts. It doesn't change the policy language. This total loss argument is really a red herring. If you look at the policy language, it refers to salvage value, and we all agree on what salvage value is, $125,000, and market value is a different word. Market value is not salvage value, and if the plaintiff wants to contort that to mean the same thing... His expert calls it market value. What I believe his expert says, and again it's confusing, is that, well, you really need to look at the market value post-repair taking into account diminution of value. That's what they said in their reply brief. That's why they should win, because the market value really is the market value after the repairs taking into account diminution of value. Well, there are two problems with that. First, the policy doesn't say that market value means post-repair taking into account diminution in value. Second, that argument runs afoul of Ohio law. Judge Nugent in the Schuller v. National Alliance Insurance Company case, the court appropriately held that the time to determine damages is immediately before the accident. You look at the market value of the car before the accident, and the agreed value here is $301,000. The policy, to be fair, does define market value at an earlier point, but if you're using it just in a lay sense, market value in that particular part, in that definition of total destruction, is not specified as the point in time, correct? It doesn't say market value does not include diminution of value. No, no, I mean, it doesn't say market value post-repair either. True. Okay. But it's a novel argument. I have never seen. There's no case law to support it. When you decide if a car is going to be repaired or not, the industry and the case law and, I think, common experience, as you look at what the value of the car was before, how much does it cost to repair, what's the salvage value, you add the cost of repair and salvage value together, if it exceeds the market value, it's a total loss. The repairs here were $36,000. This is a $301,000 car. I don't understand how it could be a total loss. It's not totally destroyed. It's not supported by the case law. In fact, it's refuted by the case law, and in particular the Schaller case. And I think Chief Judge Cole was correct in asking opposing counsel, where in the policy does it say diminution of value is covered? It doesn't say it anywhere. There's no support in the policy. There's no support in the case law. There are also additional claims, negligent and or intentional infliction of emotional distress. They fail. Pacific was not negligent. It did what it was supposed to do. And in any event, under Ohio law, there must be an awareness of real physical danger to a plaintiff. The plaintiff hasn't alleged that. It isn't true. Similarly, the intentional infliction of emotional distress claim is infirm. Pacific acted in accordance with the contract. Nothing it did can be characterized as outrageous, which is the test under the Yeager case. The fraud claim and the bad faith claim also are devoid of merit. Appellant does not explain how Pacific could possess an intent to deny a claim that had not occurred when the plaintiff purchased the policy. And because Pacific had reasonable justification for its actions, bad faith is absent. A few closing remarks. They argue about judicial estoppel. That's a red herring. It doesn't apply based on the case law. Appellant points to Chubb indemnity versus 21E Cedar. That's a different party, different insurer, different underwriter. The parties aren't the same. And in any event, that case has nothing to do with this case. There, it was an all-risk policy, but the court never addressed measure of damages. And finally, the appellant's claims against the Chubb Group of Insurance Companies, Federal Insurance Company, and Chubb & Son are completely devoid of merit. Appellant's pursuit of those claims has no basis whatsoever in fact or law. Judge Nugent got it right. Appellant's claims lack merit and were properly dismissed. Accordingly, Pacific Indemnity Company respectfully requests that this court affirm the lower court judgment. If there are any additional questions, I'll be happy to try to answer them. Yeah, I just want to clarify something for purposes of appeal. You've made reference to a number of these state law claims, which are, I think, bad faith and fraud, negligent and or intentional inflection of emotional distress, fraudulent inducement, and they're mentioned in the statement of issues of appellant's brief, but I don't see much, if any, mention of them in the brief itself. So is it your view, and I don't know if you agree with me or not, and it's your view that these issues are before us on appeal? Oh, yes, Your Honor. We did address them in our brief, I believe. Judge Nugent explained why they were not covered. We argued in the lower court. Well, I'm asking more in terms of the appellant's brief. You addressed them. Oh, the appellant's brief. Oh, yeah, that's a good question, Judge. I doubt that they are properly before the court, but for the sake of completeness, we wanted to address them just so it's clear what our position is. Okay. Thank you very much, Your Honors. Mr. Greenwell, maybe you could start with answering that question. I just want to make sure that these are issues that, while mentioned in the statement of issues, have been briefed in some fashion or properly before the court at this point. Your Honor, I believe that they have been briefed. They haven't been extensively briefed, and I think the reason being is that if you're talking about the insurer's bad faith, if they got it right, then that claim is kind of, I wouldn't say it's mooted out, but if they got it right, obviously there's no bad faith. So I was going off of, if you decide the coverage issue in our favor, I think then the bad faith breach of contract claims, I think, would be subject to reversal. Whether or not the intentional infliction of emotional distress would be is another question. And I just want to address a few other quick points, if I may. The Samuels case, as it's referred to, again, I don't want to beat a dead horse, but there is limiting language in that policy, which expressly limits their liability under a partially damaged vehicle. Just a note, it seems quite, I guess, strange that somebody would do better dealing with a third party than their own insurer for who they pay premiums and everything else and who has a fiduciary responsibility to the insured. If this was a third party claim, I don't think there would be any dispute that diminution of value is covered. What we have here is a first party claim, and you kind of have to look to that responsibility and who the policy should be construed against. And the other interesting point that I wanted to raise is that the district court below, he acknowledged the judge and ambiguity. He acknowledged that the plaintiff or the appellant here has established and demonstrated an ambiguity in the policy, and I would suggest that when there's an ambiguity, then we have an obligation to construe that ambiguity against the insurer. In this case, if it's ambiguous as to whether or not diminution in value is available, as Judge Nugent had found, then in that case we are on the side of coverage. And so long as you guys don't have any additional questions, I'll go ahead and relinquish the rest of my time. And I would suggest that I would ask, or the appellant would ask, that it's reversed, remanded, and that we be allowed to proceed on the merits. Okay. Thank you, Mr. Greenwell and Mr. Travis, for your arguments this morning. This case will be submitted, and we may call on the next case.